UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 10-141-KSF

VERNA M. SHACKLEFORD                                         PLAINTIFF

v.                          **OPINION & ORDER**

MICHAEL J. ASTRUE, Commissioner
of Social Security                                                       DEFENDANT

\* \* \* \* \* \* \* \* \*

The plaintiff, Verna M. Shackleford, brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying her claim for a period of disability and disability insurance benefits ("DIB"). The Court, having reviewed the record, will reverse the Commissioner's decision and remand this matter to the Commissioner for an award of benefits for the period from September 30, 2001 through January 26, 2005.

**I.     OVERVIEW OF THE PROCESS**

In determining whether a claimant has a compensable disability under the Social Security Act, the regulations provide a five-step sequential process which the administrative law judge must follow. 20 C.F.R. § 404.1520(a)-(e); *see Walters v. Commissioner of Social Security*, 127 F.3d 525, 529 (6th Cir. 1997). The five steps, in summary, are as follows:

     (1)      If the claimant is currently engaged in substantial gainful activity, she is not disabled.

(2) If the claimant is not doing substantial gainful activity, her impairment must be severe before she can be found disabled.

(3) If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

(4) If the claimant's impairment does not prevent her from doing past relevant work, she is not disabled.

(5) Even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Id*. The burden of proof is on the claimant throughout the first four steps of this process to prove that she is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146, n. 5 (1987). If the administrative law judge reaches the fifth step without a finding that the claimant is not disabled, then the burden shifts to the Commissioner to consider her residual functional capacity, age, education, and past work experience to determine if she could perform other work. If not, she would be deemed disabled. 20 C.F.R. 404.1520(f). Importantly, the Commissioner only has the burden of proof on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her v. Commissioner of Social Security*, 203 F.3d 388, 391 (6th Cir. 1999).

The decision of the Commissioner must be supported by substantial evidence. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). Once the decision of the Commissioner is final, an appeal may be taken to the United States District Court pursuant to 42 U.S.C. § 405(g). Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to the proper legal standards. *See Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial

Evidence" is defined as "more than a mere scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. In reviewing the decision of the Commissioner, courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id*. Rather, the Court must affirm the Commissioner's decision so long as it is supported by substantial evidence, even if the Court might have decided the case differently. *See Her*, 203 F.3d at 389-90. However, the court must review the record as a whole, and must take into account whatever in the record fairly detracts from its weight. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for a rehearing or to reverse and order benefits granted. The Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 111 S.Ct. 2157, 2163 (1991). Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Id*. at 176.

## II. SHACKLEFORD'S MEDICAL HISTORY AND THE ADMINISTRATIVE RECORD

In support of her claim of disability, Shackleford relies on various medical reports and records. First, she points to the records from R. Smith Howard, M.D., who treated her from 1986 through 1999. He diagnosed her with lumbar disc syndrome, and prescribed pain medication and

muscle relaxers [TR 267-73]. Shackleford also notes that x-rays taken on November 26, 1999 at the Norton County Hospital revealed degenerative disc disease at the L4-L5 level of the lumbar spine [TR 178-80]. Also at that time, Gary Williams, M.D., reviewed her history of recurrent hydroephrosis and ureteral obstruction which required lithotripsy and multiple stenting, and he documented a history of lumbar disc herniation and fibromyalgia [TR172-75]. Then, Shackleford was treated by Farooq Ghory, M.D. for fibromyalgia and low back pain from July 2000 through October 2000. He prescribed Klonopin, Darvocet, Robaxin, Soma and Pamelor [TR 186-93].

From 2001 to 2002, Shackleford was treated at the Clover Fork Clinic by Sharon Colton, M.D. Dr. Colton diagnosed Shackleford with nephrolithisasis, fibromyalgia and low back pain with herniation. She prescribed Klonopin, Nortriptyline, Soma, and Darvocet [TR 224-43].

On March 23, 2002, Shackleford was seen for a consultative examination at the Commissioner's request by Michael Dobbs, M.D. According to Dr. Dobbs, Shackleford reported pain in the back and legs, an enlarged kidney, restless leg syndrome, and mitral valve prolapse. He noted a history of fibromyalgia and that Shackleford described a constellation of symptoms which "does fit with the diagnosis of fibromyalgia." [TR 221]. Upon review of an x-ray of her lumbar spine showing narrowing of the disc space at two levels and finding on physical examination that she had a reduced range of motion, tenderness in the lumbar spine, and decreased pinprick sensation in the left arm and leg, Dr. Dobbs reported that it is "possible that she has a ruptured lumbar disc or two." [TR 221]. Dr. Dobbs was not asked to complete an assessment form; however, he did opine that Shackleford's "ability to sit, stand, move about and travel is impaired because of pain." [TR222].

Dr. Dobbs' report was reviewed in April and September 2002 by state agency reviewers John Rawlings, M.D. and H.T. Anzures, M.D. Both Dr. Rawlings and Dr. Anzures opined that

Shackleford could perform medium work with no more than occasional climbing of ropes, ladders and scaffolds, which would not expose the worker to hazards such as moving machinery or unprotected heights [TR 245-46, 254-55]. Dr. Anzures reported that treating source statements were not available for him to review when he adopted the RFC determined by Dr. Rawlings [TR 259].

Shackleford also relies on the records from William H. Brooks, M.D., her treating neurosurgeon. On May 15, 2003, Dr. Brooks opined that Shackleford was disabled [TR 276]. Then on June 12, 2003 he diagnosed her with advanced degenerative disc disease at L5-S1 and L4-5, which he opined accounted for her reported symptoms. He also explained that she had multiple symptoms consistent with a diagnosis of fibromyalgia. Furthermore, he stated that "although she has an anatomical abnormality and construct, I do not think that surgical intervention will restore her health to the degree that would warrant the risk" [TR 277].

Shackleford underwent electromyography testing at Neurodiagnostic Laboratory in Lexington, Kentucky in June 2003. The abnormal results included significant findings suggestive of right L5-S1 radiculopathy [TR 263]. An MRI was subsequently performed at Baptist Regional Medical Center which revealed herniation at the L4-L5 level of her lumbar spine, compressing on the dural sac both bilaterally and centrally [TR 264].

Finally, Shackleford points to her treatment records from Dr. Gregory Dye as evidence of her disability. Dr. Dye treated Shackleford during 2003 and 2004. His examinations revealed tenderness, lower extremity edema and indications of neuropathy. He diagnosed her with low back pain and fibromyalgia. Dr. Dye prescribed Soma, Darvocet, and Klonopin for Shackleford [TR 273-275, 245-352]. Based on his treatment of Shackleford, including his review of the MRI and abnormal EMG results, he completed an assessment on December 1, 2004. He opined that the

maximum Shackleford would lift occasionally was 5 to 10 pounds. He limited standing and walking to no more than three to four hours total and indicated a need for position change every hour. He also limited pushing and pulling and recommended avoidance of activities which requires climbing and stooping [TR 379-80].

Shackleford filed an application for DIB benefits on January 16, 2002 [TR 70-72]. This application was denied by Administrative Law Judge ("ALJ") Joan Lawrence on January 26, 2005 [TR 15-26]. After exhausting her administrative remedies, Shackleford filed a civil action in this court. *See Shackleford v. Astrue*, London Civil Action No. 6:07-053-GWU. On July 16, 2008, this Court remanded the case for further proceedings [TR 440-53]. ALJ Lawrence's 2005 decision was reversed and remanded by this Court because she failed to accord proper weight to the opinions of Dr. Brooks and Dr. Dye, Shackleford's treating physicians. Specifically, the Court held as follows:

> Although the opinion of a non-examining physician may be accepted over an examiner if the non-examiner has access to the entire record and clearly stated the reasons for his difference of opinion, *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994), that is not the case here. The state agency sources lacked access to some of the most significant evidence in this case, the MRI and EMG findings. While the ALJ was not required to give controlling weight to the conclusory opinion of disability by Dr. Brooks, the opinion of this specialist along with the highly restrictive medical assessment by Dr. Dye should have been a red flag regarding the reliability of the now outdated opinions of the state agency sources. Dr. Dye did give specific restrictions, which the ALJ rejected as being inconsistent with the rest of the medical record, but the ALJ mistakenly believed that the EMG/NCV testing was normal . (Tr.18). She also described the MRI as showing "diffuse discogenic and degenerative changes throughout the lumbar spine" (Id.). making no mention of the two disc herniations. Moreover, although Dr. Dye's reports are not extremely detailed, they describe neuropathy and positive findings, as described earlier, and his medical report was explicitly based on the MRI findings. Therefore, while the evidence may be insufficient in its present state to award benefits, at a minimum a remand will be required for additional vocational testimony based on the report of Dr. Dye or a medical advisor who has had access to the entire record.

[TR 452-53].

In the meantime, Shackleford filed a second application for DIB benefits on September 22, 2005, alleging that she became disabled on January 27, 2005, the day after ALJ Lawrence's prior decision [TR 460]. On June 27, 2007 ALJ Frank Letchworth issued a partially favorable decision, finding that Shackleford was disabled beginning July 31, 2006, but was not disabled between January 27, 2005 and July 30, 2006 [TR 460-69]. ALJ Letchworth's decision became final when Shackleford did not appeal.

On remand of ALJ Lawrence's January 26, 2005 decision, the Appeals Council vacated the decision and remanded the case for further consideration of the treating source opinions. On January 21, 2010, ALJ Lawrence issued a new decision, again finding Shackleford not disabled for the period September 30, 2001 through January 25, 2005. At the time of ALJ Lawrence's 2010 decision, Shackleford was 47 years old, thus classified as a younger individual [TR70, 427]. She has a high school equivalency diploma ("GED") and previously worked as a pet store owner [TR 384, 423, 1434]. Shackleford alleges that she became unable to work on September 30, 2001 due to back problems, fibromyalgia, restless leg syndrome, kidney stones, chronic fatigue syndrome, hypertension, and depression. Noting that ALJ Letchworth had found Shackleford disabled as of July 31, 2006, but not for the period from January 27, 2005 to July 30, 2006, ALJ Lawrence defined the period under adjudication as September 30, 2001 though January 25, 2005 [TR 423].

The ALJ began her analysis at step one by determining that Shackleford has not engaged in any substantial gainful activity since September 30, 2001 [TR 426]. At step two, the ALJ found Shackleford has a combination of impairments that, when considered together, are severe. However, continuing to the third step, the ALJ determined that these impairments or combinations of

impairments are not associated with clinical signs and findings that meet or equal in severity any of the listed impairments [TR 426].

At the final steps, the ALJ found that Shackleford has the RFC to perform work-related activities, except for the following limitations: lifting a maximum of about twenty pounds occasionally and ten pounds frequently; standing and/or walking about six hours in an eight-hour workday; no climbing ladders; avoid hazardous conditions; sitting about six hours in an eight-hour workday; and limited but satisfactory ability to deal with the public and deal with work stressors [TR 426]. Reviewing the administrative record and considering Shackleford's testimony, the ALJ concluded that she was unable to perform past relevant work [TR 427].

At the fifth and final step of the process, the ALJ presented Shackleford's RFC and vocational profile to the VE, who testified that there were a significant number of jobs that Shackleford could perform [TR 428, 1435-36]. Consequently, the ALJ determined that Shackleford was not disabled within the meaning of the Social Security Act for the period from September 30, 2001 through January 25, 2005 [TR 428]. After exhausting her administrative remedies, Shackleford filed this civil action. This case is now ripe for review under 42 U.S.C. § 405(g).

## III.  ANALYSIS

First, the Court must address the period under adjudication in this case. After receiving the unfavorable decision by ALJ Lawrence on January 26, 2005, Shackleford filed a new application alleging that she became disabled on January 27, 2005 [TR 460]. On June 27, 2007, ALJ Letchworth issued his partially favorable decision, finding Shackleford disabled beginning July 31, 2006, but finding that she was not disabled for the period between January 27, 2005 and July 30, 2006 [TR 460-69]. That decision is now final and binding under the doctrine of *res judicata*. Then,

on the remand of her January 26, 2005 decision, ALJ Lawrence undertook a further review and issued a new decision on January 21, 2010 finding Shackleford not disabled for the period from September 30, 2001 through January 25, 2005 [TR 423]. There is no dispute, however, that the correct period is September 30, 2001 through January 26, 2005, the day ALJ Lawrence's decision was issued, not January 25, 2005, the date mistakenly used by ALJ Lawrence.

With the proper time period now defined, the Court turns to Shackleford's arguments on this appeal. Shackleford argues that the ALJ failed to comply with the directions of the Court to obtain "additional vocational testimony based on the report of Dr. Dye or a medical advisor who has had access to the entire record" [TR 453]. The Court agrees. On remand, although the ALJ acknowledged the Court's order, she did not consult a medical advisor or ask the VE to assume the restrictions assessed by Dr. Dye. Nevertheless, on cross-examination by Shackleford's attorney, the VE testified that Dr. Dye's restrictions would eliminate any employment [TR 1437].

The Court also agrees with Shackleford that the ALJ erred by failing to afford controlling weight to Dr. Dye's disability assessment. Generally, the ALJ should give controlling weight to a disability opinion by a treating physician if it is well-supported by clinical and laboratory findings and is consistent with other evidence. The ALJ may consider the length and nature of the treating relationship, the supportability of the opinion, consistency, specialization, and any other factors that may be appropriate. *See* 20 C.F.R. § 416.927(d)(2)(2007). The supportability of the opinion depends on the degree to which the source presents relevant evidence to support the opinion, particularly medical signs and laboratory findings. *See* 20 C.F.R. § 416.927(d)(3)(2007); *see also Sizemore v. Secretary of Health and Human Services*, 865 F.2d 709, 711-712 (6th Cir. 1988).

A review of the entire record reveals that Dr. Dye's 2004 assessment was supported by both

the medical findings and the consultation from Dr. Brooks. Dr. Brooks' June 12, 2003 letter clarified that there was objective evidence to support the lumbar spine impairment, even though the risk of surgery outweighed the possible benefit [TR 277]. Moreover, both the MRI and the abnormal EMG testing which had been performed in June 2003 support the opinions of Dr. Dye and Dr. Brooks. To the extent that the ALJ determined that Dr. Dobbs' 2002 report refutes Dr. Dye's opinion, the Court disagrees. Dr. Dobbs reviewed an x-ray of the lumbar spine which showed narrowing of the disc space at two levels, and on physical examination noted a reduced range of motion, tenderness of the lumbar spine, and decreased sensation to pinprick in the left arm and leg [TR 221]. He concluded that it is "possible that she has a ruptured lumbar disc or two" [TR 221]. Although he did not complete an assessment form, he opined that Shackleford's "ability to sit, stand, move about and travel is impaired because of pain" [TR 222]. For these reasons, and due to Dr. Dye's ongoing treatment of Shackleford, the Court finds that the ALJ failed to accord controlling weight to the disabling opinion of Dr. Dye.

Shackleford's application, filed in 2002, has resulted in an extensive administrative record containing over 1,400 pages. She has waited a long period of time for a final decision on her application. She has had multiple hearings before an ALJ, filed petitions to the appeals council, and taken a previous appeal to this Court that resulted in a remand. Having found that the ALJ failed to follow the law and to afford controlling weight to the opinion of Dr. Dye, the Court finds that another remand is simply not necessary. The record contains substantial evidence that Shackleford is disabled and unable to return to work. The VE testified under cross examination that Dr. Dye's assessment, if accepted, would eliminate all jobs [TR 1437]. Thus, when Dr. Dye's opinion is given controlling weight, the VE's testimony and the regulations support a finding that Shackleford was

disabled. Because all factual issues have been resolved and the record adequately establishes entitlement to benefits, a reversal and remand for an award of benefits is the appropriate relief under these circumstances. *See Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Faucher*, 17 F.3d at 176; *Garland v. Shalala*, 78 F.3d 584 (6th Cir. 1996); *Mowrey v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

**IV.   CONCLUSION**

For the reasons set forth above, the Court, being fully and sufficiently advised, hereby **ORDERS** as follows:

(1) the plaintiff's motion for summary judgment [DE #12] is **GRANTED**;

(2) the plaintiff's motion to exceed the page limitation [DE #13] is **GRANTED**, and the plaintiff's tendered memorandum in support of motion for summary judgment shall be **FILED** in the record;

(3) the plaintiff's motion for leave to file a response [DE #15] is **GRANTED**, and the tendered response shall be **FILED** in the record.;

(4) the defendant's motion for summary judgment [DE #14] is **DENIED**;

(5) the decision of the Commissioner is **REVERSED**, and this matter is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for the calculation and award of benefits for the period September 30, 2001 through January 26, 2005;

(6) a judgment will be entered contemporaneously with this Opinion and Order.

This February 15, 2011.



**Signed By:**
*Karl S. Forester*  KSF
**United States Senior Judge**